1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT GUY BAKER,

11              Petitioner,              No. 2:07-cv-1170-JAM-JFM (HC)

12        vs.

13   MATTHEW C. KRAMER, Warden,

14              Respondent.            FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2001 conviction on charges of

18   assault with a semi-automatic firearm enhanced by findings of personal use of a firearm and

19   personal infliction of great bodily injury and the prison sentence imposed thereon.[1]  This action is

20   proceeding on six claims raised in the original petition, filed June 18, 2007, and several claims

21   challenging his sentence raised in a supplemental petition filed May 21, 2009.

22   /////

23   /////

24   /////

25   _____

26        [1]  The conviction and sentence challenged herein were suffered in one of three criminal
     cases brought against petitioner and referred to by the state court of appeal as Case 3.  See infra.

1

FACTS[2]

In Case No. FC47622 (hereafter case 1), [petitioner] pled no contest to unlawful possession of a firearm (Pen. Code § 12021, subd. (c)(1)) and received probation, which was later revoked.  In case No. FC47988 (hereafter case 2), [petitioner] pled no contest to unlawful sexual intercourse with a minor more than three years younger than [petitioner] (§ 261.5, subd. (c)), and received probation, which was later revoked.  In case No. FCR185360 (hereafter case 3), a jury found [petitioner] guilt of failure to appear while on bail (§ 1320.5) and assault with a semi-automatic firearm (§245, subd. (b)), and found true allegations of personal firearm use and infliction of great bodily injury (§§ 12022.5, subd. (a); 12022.7, subd. (a)).[3]  [Petitioner] was sentenced on all three cases to 24 years in state prison.

. . . .

BACKGROUND[Note omitted]

Since [petitioner]'s appeal in case 1 raises only a sentencing issue, a detailed recitation of facts in that case is unnecessary.[4]  We report the facts relevant to case 3 as follows.

At about 3:45 a.m. on July 17, 2000, Suisun Police Officer Eric Smith was dispatched to a Skylark Drive address.  The victim, Jose Lopez, walked out of the residence and said he had been shot in the right leg.  Lopez was transported to the hospital.  No gun was found at the scene, but a spent nine-millimeter shell casing was found in the street, eight to 10 feet from the curb.  The casing appeared to have been fired from a semi-automatic weapon.

Lopez testified at the preliminary hearing, but died before trial in circumstances unrelated to this case.  His preliminary hearing testimony was read to the jury.  Lopez testified that on the night of the shooting he called his girlfriend, Cynthia Tauriac, to say he was coming over.  When he arrived, he twice threw a piece of bark at her window to get her attention.  After someone looked out the window, Lopez approached the front door, which "flew open," and a person pointed a black automatic weapon at Lopez's face and repeatedly told him to back up and run.  As Lopez started to walk away he was shot.  Lopez said that he then saw [petitioner], Tauriac and Jose Barajas run to a black car parked across the street.  [Petitioner] and Barajas entered the car and sped off.

---

[2]  The facts are taken from the opinion of the California Court of Appeal for the First Appellate District in People v. Robert Guy Baker, No. A096731 (Dec 20, 2002), a copy of which is attached as Exhibit 4 to Respondent's Answer to Petition for Writ of Habeas Corpus, filed June 13, 2008.

[3]  This was the third trial in case 2.  In the first trial, the jury was unable to reach a verdict on the assault charge.  However, the jury convicted [petitioner] of failure to appear while on bail (Pen. Code, § 1320.5).  The second trial on the assault charge ended in a mistrial.

[4]  [Petitioner] raises no claim of error regarding case 2.

On direct examination, Lopez identified [petitioner] as the shooter.  On cross-examination, however, Lopez conceded that soon after the shooting he could not positively identify his assailant from a six-person photo lineup shown to him.  Lopez also said that because Tauriac had told him that [petitioner] was his assailant, he formed such belief and testified thereto.  Lopez said he told the police he had been shot by Robert Luna because that was the name Tauriac gave him.  Lopez also said that a month or two prior to the preliminary hearing Suisun Police Detective Michael Pimentel came to his home, showed him a single photo, and asked him if "that was the person."

At trial, Pimentel confirmed that Lopez initially said he was shot by a Robert Luna, and that Tauriac told Lopez that Luna was the shooter's name.  Pimentel testified that a month after the shooting he showed Lopez a series of six photos, and Lopez identified someone other than [petitioner] as his assailant.  Pimentel also testified that in September 2000, Lopez called Pimentel and expressed concern that he would not recognize the person who shot him if he encountered him on the street and he knew [petitioner] was not in custody.  He requested to know who police believed to be his assailant.  After conferring with his sergeant, Pimentel showed Lopez a photo of [petitioner], advising him that it was for Lopez's own safety and could have no bearing on the investigation or Lopez's original identification.  On redirect examination Pimentel said Lopez described his assailant as being 5 feet 8 inches tall, 170 pounds, wearing a red beanie and a red shirt.  Pimentel conceded that [petitioner] is shorter than the assailant Lopez described.

Tauriac testified that she had had an off and on romantic relationship with Lopez for about five years, but they were not involved at the time of the shooting.  Tauriac said she had been a sporadic methamphetamine user for about eight years.  In an attempt to change her life, she stopped using methamphetamine, ended her relationship with Lopez and moved.  She said that after midnight on the morning of the shooting, Barajas and [petitioner], also known as Thumper, came to see her.  At about 2:00 a.m., [petitioner] left Tauriac and Barajas alone in Tauriac's bedroom for about 45 minutes.  During that time Lopez called and asked who was there.  When she told him it was none of his business and he should go on with his life, he said he was coming over.

About 20 minutes later, Tauriac heard something hitting her bedroom window.  [Petitioner] came into the room and then went downstairs, followed by Barajas.  Tauriac heard Lopez say "My lady," and then heard [petitioner] say "back up" and "run."  When Tauriac came downstairs she saw [petitioner] and Barajas standing outside.  She saw a flash come from the gun [petitioner] was holding and heard a single gunshot.  Barajas walked across the street to his car followed by [petitioner] and the two then drove away.  When the police arrived Tauriac fled because she feared [petitioner] and Lopez, and feared she had violated her parole.

Tauriac said she made up the name Robert Luna and told Lopez that Luna shot him because she was afraid to tell him that [petitioner] was the shooter.  She later told police that "Robert," also known as "Thumper," was the shooter, and lived at Villa Circle.  Police confirmed that [petitioner] is known by the names
/////

3

"Thumper" and "Little Rob," and lived at Villa Circle. Tauriac said that prior to the shooting [petitioner] and Lopez had never met.

Barajas testified that he and [petitioner] were at Tauriac's house on the night of the shooting, and [petitioner] answered the knock at Tauriac's door. After hearing a gunshot Barajas entered his car. [Petitioner] then entered the car and they drove to Vacaville, where they went their separate ways. On cross-examination Barajas testified that he had had sex with Tauriac about two weeks prior to the shooting. However, prior to the shooting he and Lopez worked out their differences about Barajas's having had sex with Tauriac.

David Rodriguez testified that he was a longtime friend of both Lopez and Barajas and had no personal knowledge of the subject incident. At the time of the shooting, he was 5 feet 6 inches tall, and weighed about 150 pounds.

Jan Layfield, an investigator with the district attorney's office, testified that following the shooting he interviewed Rodriguez in state prison. Rodriguez said he was friends with Barajas and the person who shot Lopez. Rodriguez said that a couple of days after the assault, the shooter admitted to shooting Lopez, but said he had acted in self-defense, which Rodriguez did not believe. Eventually Rodriguez identified the shooter as "Thumper" and "Rob." The same day, Layfield interviewed Barajas in state prison. Barajas told Layfield he went to Tauriac's home with [petitioner] on the night of the shooting and referred to [petitioner] as "Thumper."

On rebuttal, Pimentel said that Rodriguez told him that Lopez's assailant admitted the shooting and that Lopez was shot with a nine-millimeter weapon.

The thrust of the defense was that Rodriguez, a gang member with a violent past and a known associate of Barajas, fit Lopez's description of his assailant and committed the assault. The defense also argued that Tauriac falsely identified [petitioner] as the shooter because she feared Barajas and Lopez.

People v. Baker, slip op. at 1-5.

## ANALYSIS

I.    Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

1   28 U.S.C. § 2254(d).

2          Under section 2254(d)(1), a state court decision is "contrary to" clearly

3   established United States Supreme Court precedents if it applies a rule that contradicts the

4   governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

5   indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

6   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

7   (2000)).

8          Under the "unreasonable application" clause of section 2254(d)(1), a federal

9   habeas court may grant the writ if the state court identifies the correct governing legal principle

10  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

11  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

12  simply because that court concludes in its independent judgment that the relevant state-court

13  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

14  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

15  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

16  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

17         The court looks to the last reasoned state court decision as the basis for the state

18  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

19  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

20  habeas court independently reviews the record to determine whether habeas corpus relief is

21  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

22  II.    Petitioner's Claims

23         Petitioner raises six claims challenging his conviction in his original petition and a

24  challenge to his sentence in the supplemental petition.  Petitioner challenges his conviction with

25  claims that his constitutional rights were violated by (1) admission of the accuser's preliminary

26  hearing testimony; (2) admission of the accuser's "tainted identification" of petitioner; (3)

1    ineffective assistance of counsel; (4) prosecutorial misconduct; (5) instructional error; and (6)

2    failure to inform defense counsel about police showing a single photograph to the accuser.  In the

3    supplemental petition, petitioner claims that his constitutional rights were violated by a sentence

4    imposed in the absence of jury findings of the facts relied on to impose the upper term sentence

5    and that the prosecution waived the right to seek an upper term sentence.

6          A.      Admission of Accuser's Preliminary Hearing Testimony

7                  Petitioner's first claim is that his rights under the Confrontation Clause were

8    violated by admission at trial of the victim's preliminary hearing testimony.  The last reasoned

9    state court rejection of this claim is the decision of the California Court of Appeal for the First

10   Appellate District on petitioner's direct appeal.  The state court of appeal addressed the claim as

11   follows:

12          [Petitioner] contends that because he did not have an opportunity to cross-
            examine Lopez at the preliminary hearing with an interest and motive that was
13          sufficiently similar to his interest and motive at trial, admission of Lopez's
            November 2000 preliminary hearing testimony violated Evidence Code section
14          1291[5] as well as [petitioner]'s right of confrontation under the staet and federal
            Constitutions.  He provides several bases for this contention.  First, at the
15          preliminary hearing, Lopez testified that Pimentel had shown him a photo of the
            [petitioner] approximately one or two months before.  Lopez seemed to indicate
16          that a third person was present when that occurred.  [Petitioner] argues that the
            court's refusal to permit him to obtain the name of that third person during the
17          cross-examination of Lopez at the hearing prevented him from exploring the
            inconsistency in Lopez's testimony as to whether a third person was actually
18          present.  At the preliminary hearing, after being cross-examined about his failure
            to identify [petitioner] at the six-person photo lineup, Lopez was cross-examined
19          regarding Pimentel's later visit to show him a single photo of [petitioner].  During
            that cross-examination the following colloquy occurred:

20
                  "[Defense Counsel]: So, the police have come to you
21          within the last month --

22                "The Court:  Now, you are misstating what the testimony
            way.  He said in the last month or two.
23

24          ⁵  Evidence Code section 1291 provides in relevant part:  "(a)  Evidence of former
     testimony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness
25   and:  [¶]...[] (2) The party against whom the former testimony is offered was a party to the action
     or proceeding in which the testimony was given and had the right and opportunity to cross-
26   examine the declarant with an interest and motive similar to that which he has at the hearing."

                                                        6

"[Lopez]:  There will be another witness.  It doesn't matter.

"The Court:  That's okay.

"[Defense Counsel]:  I'm only worried about what you have to say right now.

"The Court:  Just --

"[Defense Counsel]:  Can you give us any more specific date --

"[Lopez]:  No.

"[Defense Counsel]:  -- when this one photo was shown?

"[Lopez]:  Nope.  Don't recall.

"[Defense Counsel]:  You don't recall?

"[Lopez]:  No.

"The Court:  All right.  Anything else?

"[Lopez]:  My witness might.

"The Court:  Well, no, that's okay.  [¶] [Defense counsel], any more questions?

"[Defense Counsel]:  When you were shown the one photograph, one single photograph, who was with you?

"[Lopez]:  Myself.

"[Defense Counsel]:  You just mentioned that your witness might be able to give us the date of that.  Was somebody there?

"The Court:  That's discovery, so I'm not going to let you ask that."

[Petitioner] also argues that Pimentel's trial testimony provided a reason for showing the single photograph to Lopez that had never before been disclosed. Thus the defense had not been able to verify this with Lopez at the preliminary hearing.

Finally, [petitioner] argues that at the preliminary hearing he refrained from questioning Lopez about whether he knew Rodriguez and whether the shooter could have been Rodriguez or Barajas because such questions could have been considered discovery, prohibited by Penal Code section 866, subdivision (b). In addition, such questions would have given Lopez a preview of the questions to be asked at trial and enabled Lopez to rehearse his responses.

In *People v. Zapien* (1993) 4 Cal.4th 929, 974, the defendant contended that the preliminary hearing testimony of a particular witness was inadmissible because his motive to cross-examine that witness was significantly different than his motive at trial. In upholding the admission of the preliminary hearing testimony, the Supreme Court stated: "Frequently, a defendant's motive for cross-examining a witness during a preliminary hearing will differ from his or her motive for cross-examining that witness at trial. for the preliminary hearing testimony of an unavailable witness to be admissible at trial under Evidence Code section 1291, these motives need not be identical, only "similar." [Citation.] Admission of the former testimony of an unavailable witness is permitted under Evidence Code section 1291 and does not offend the confrontation clauses of the federal or state Constitutions--not because the opportunity to cross-examine the witness at the preliminary hearing is considered an exact substitute for the right of cross-examination at trial [citation], but because the interests of justice are deemed served by a balancing of the defendant's right to effective cross-examination against the public's interest in effective prosecution. [Citations.]" (*Zapien*, at p. 975.)

During both the preliminary hearing and at trial, [petitioner]'s motive was to discredit Lopez's version of the crime and establish that Lopez was unable to identify his assailant. Thus, [petitioner] has failed to establish that his motive in cross-examining Lopez at the preliminary hearing was not similar to his motive at trial.

We also reject [petitioner]'s claim that he was prejudiced by being prevented from cross-examining Lopez regarding the "mystery witness." Lopez's comment regarding another witness came in response to questioning solely about the date he was shown the single photo by Pimentel. As the People point out, [petitioner] could clearly have examined Pimentel at the preliminary hearing and/or at trial as to the existence of some witness regarding the photo showing. Moreover, the issue of another witness was not raised during any other questioning at the preliminary hearing and was not raised at trial. [Petitioner] has failed to establish that he was denied the ability to cross-examine effectively.

We also reject [petitioner]'s arguments regarding his tactical reasons for not vigorously cross-examining Lopez regarding Rodriguez and Barajas. His argument that such questioning would have been curtailed by the court is merely speculative. He was provided with the opportunity for effective cross-examination and the admissibility of prior testimony does not depend on whether he took advantage of that opportunity. (See *People v. Zapien*, *supra*, 4 Cal.4th at p. 975.)

People v. Baker, slip op. at 5-8.

/////

/////

/////

/////

8

1    In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004)[6], the United States Supreme

2    Court held that "testimonial statements by witnesses absent from trial" are admissible "only

3    when the declarant is unavailable, and only where the defendant has had a prior opportunity to

4    cross-examine." <u>Id</u>. at 59.  Lopez's preliminary hearing testimony was a "testimonial statement"

5    within the meaning of <u>Crawford</u>.  <u>Id</u>. at 51-52.  Lopez was unavailable to testify at trial because

6    he was deceased.  And the record is clear that petitioner had an opportunity to cross-examine

7    Lopez at the preliminary hearing.  Accordingly, petitioner's Confrontation Clause rights were not

8    violated by the admission of Lopez's preliminary hearing testimony at trial.  The state court of

9    appeals' rejection of this claim was congruent with applicable principles of federal law.  This

10   claim should be denied.

11         B.      Admission of Lopez's In-Court Identification of Petitioner

12               Petitioner's second claim is that his due process rights were violated by admission

13   at trial of the victim's preliminary hearing testimony.  The last reasoned state court rejection of

14   this claim is the decision of the California Court of Appeal for the First Appellate District on

15   petitioner's direct appeal.  The state court of appeal addressed the claim as follows:

16               [Petitioner] next contends the pretrial identification procedures utilized by
         the police were unduly suggestive and, as a result, the trial court erroneously
17       admitted Lopez's preliminary hearing identification of defendant.  He argues that
         it was impermissibly suggestive to show Lopez a single photo of defendant shortly
18       before the preliminary hearing, and doing so resulted in the in-court identification
         of [petitioner] as Lopez's assailant.

19
               The People argue that [petitioner] has waived this issue by failing to make
20       a timely and specific objection below.  (Evid. Code, § 353, subd. (a).) [Petitioner]
         rejoins that the issue is not waived because he did not object to the admission of
21       Lopez's preliminary hearing testimony on the ground that Lopez's testimony was
         not credible, particularly with regard to Lopez's identification of [petitioner].

22
               [Petitioner]'s objection lacked the specificity required under Evidence
23       Code section 353, subdivision (a).  Consequently, his failure to make a timely and
         specific objection to the identification procedure utilized by Pimentel and to the

24

25       [6] Petitioner's conviction became final in 2006.  <u>See</u> Ex. 7 to Answer.  Accordingly,
     <u>Crawford</u> applies to the claim at bar.  <u>Cf</u>. <u>Whorton v. Bockting</u>, 549 U.S. 406, 409 (2007)
26   (<u>Crawford</u> does not apply retroactively "to cases already final on direct review.")

court's admission of Lopez's in-court identification of him waives the issue on appeal.  (Evid. Code, § 353; *People v. Cunningham* (2001) 25 Cal.4th 926, 989.)

People v. Baker, slip op. at 8-9.

As the United States Supreme Court has explained, in all cases in which a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The state rule is only "adequate" if it is "firmly established and regularly followed."  Id. (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)); Bennett v. Calderon, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied").  The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000), cert. denied, 531 U.S. 918 (2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983).  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

Ordinarily, "cause" to excuse a default exists if the petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Examples of sufficient causes include "a showing that the factual or legal basis for a claim was not reasonably available to counsel," or "that 'some interference by officials' made compliance impracticable."  Id. (citations omitted) (quoting Brown v. Allen, 344 U.S. 443, 486 (1953)).  Ineffective assistance of counsel may be cause to excuse a default only if the procedural default was the result of an independent constitutional violation.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) ("Not just any

1   deficiency in counsel's performance will do, however; the assistance must have been so

2   ineffective as to violate the Federal Constitution.").  Put another way, "[s]o long as a defendant is

3   represented by counsel whose performance is not constitutionally ineffective under the standard

4   established in <u>Strickland v. Washington</u>, [466 U.S. 668 (1984), the federal courts] discern no

5   inequity in requiring him to bear the risk of attorney error that results in a procedural default."

6   <u>Murray</u>, 477 U.S. at 488.

7            Anticipating that the court would find this claim procedurally defaulted, petitioner

8   asserts that cause exists to excuse the default.  He contends that his trial counsel was ineffective

9   for failing to object to Lopez's in-court identification.  The California Court of Appeal

10   considered plaintiff's ineffective assistance of counsel claim as to this issue:

11           We next consider [petitioner]'s argument that defense counsel's failure to
          object to the admission of Lopez's in-court identification of him constituted
12          ineffective assistance of counsel.  To prove a claim of ineffective assistance of
          counsel, the defendant must establish that counsel failed to perform with
13          reasonable competence, and that it is reasonably probable that a determination
          more favorable to the defendant would have resulted in the absence of counsel's
14          incompetence.  (*People v. Pope* (1983) 33 Cal.3d 572, 583.)  A conviction will be
          reversed on the ground of ineffective assistance of counsel only if the appellate
15          record " 'affirmatively discloses that counsel had no rational tactical purpose for
          his act or omission.' " (*People v. Zapien*, *supra*, 4 Cal.4th at p. 980, quoting
16          *Fosselman*, at p. 581.)  When the appellate record sheds no light on why counsel
          acted or failed to act in the manner challenged, the conviction is affirmed unless
17          counsel was asked for an explanation and failed to provide one or there is no
          satisfactory explanation.  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)
18

19          In order to demonstrate that it is reasonably probable that he was
          prejudiced by counsel's failure to object to the identification evidence, the
20          defendant must first establish that the pretrial identification procedure was so
          unfair that it violated his right to due process.  (*People v. Nation* (1980) 26 Cal.3d
21          169, 179.)  "A pretrial identification procedure violates a defendant's due process
          rights if it is so impermissibly suggestive that it creates a very substantial
22          likelihood of irreparable misidentification." (*People v. Contreras* (1993) 17
          Cal.App.4th 813, 819.)  The use of a single photo identification procedure has
23          been condemned in numerous cases.  (*Id.* at p. 820, and cases cited therein.)

24          However, even if the pretrial identification procedure was unfair, we
          conclude that [petitioner] has failed to demonstrate that he was prejudiced by the
25          admission of Lopez's in-court identification of him.  Although the jury was not
          instructed to disregard this testimony, both the defense counsel and the prosecutor
26          encouraged the jury to do so in their arguments.  Moreover, the jury was properly
          instructed pursuant to CALJIC No. 2.92 on recognizing factors bearing on the

1   accuracy of an eyewitness's identification of the defendant.  Included in those
2   factors was the witness's ability to identify the alleged perpetrator in a
    photographic or physical lineup, and whether the witness's identification was a
3   product of his own recollection.  In addition, Lopez was not the sole witness to the
    shooting.  Tauriac testified that she saw defendant fire the gun at Lopez.  In
4   addition, Barajas, who was also present at the shooting, told investigator Layfield
    that as he and [petitioner] left the shooting scene, he was angry at [petitioner] for
5   shooting Lopez.  Although Rodriguez was not an eyewitness to the shooting, he
    told Layfield that [petitioner] admitted his involvement.

6         We conclude that even if defense counsel had successfully objected to
    Lopez's in-court identification, a determination more favorable to the [petitioner]
7   is unlikely.

8   People v. Baker, slip op. at 9-10.

9         The Sixth Amendment guarantees the effective assistance of counsel.  The United

10  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

11  Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  First, a

12  petitioner must show that, considering all the circumstances, counsel's performance fell below an

13  objective standard of reasonableness.  Strickland, 466 U .S. at 688.  To this end, petitioner must

14  identify the acts or omissions that are alleged not to have been the result of reasonable

15  professional judgment.  Id. at 690.  The federal court must then determine whether in light of all

16  the circumstances, the identified acts or omissions were outside the wide range of professional

17  competent assistance.  Id.  "We strongly presume that counsel's conduct was within the wide

18  range of reasonable assistance, and that he exercised acceptable professional judgment in all

19  significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

20  Strickland, 466 U.S. at 689).

21        Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

22  693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

23  unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

24  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

25  see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

26  2000).  A reviewing court "need not determine whether counsel's performance was deficient

before examining the prejudice suffered by the defendant as a result of the alleged deficiencies ...
If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice
... that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting
Strickland, 466 U.S. at 697).

"A conviction which rests on a mistaken identification is a gross miscarriage of
justice." Stovall v. Denno, 388 U.S. 293, 297 (1967).  Procedures by which the defendant is
identified as the perpetrator therefore must be examined to assess whether they are unduly
suggestive.  "It is the likelihood of misidentification which violates a defendant's right to due
process." Neil v. Biggers, 409 U.S. 188, 198 (1972).  Due process protects against the admission
of evidence deriving from suggestive identification procedures.  See id. at 196; cf. Manson v.
Brathwaite, 432 U.S. 98, 106 n.9 (1977) (standards are not different for pretrial and in-trial
identifications).  Unnecessarily suggestive identification procedures alone do not require
exclusion of in-court identification  testimony, however; reliability is the linchpin in determining
the admissibility of identification testimony.  See id . at 114.  In determining whether in-court
identification  testimony is sufficiently reliable, courts consider five factors: (1) the witness's
opportunity to view the defendant at the time of the incident; (2) the witness's degree of
attention; (3) the accuracy of the witness's prior description; (4) the level of certainty
demonstrated by the witness at the time of the identification procedure; and (5) the length of time
between the incident and the identification.  See id. at 114; Neil, 409 U.S. at 199-200.

At the preliminary hearing, Lopez testified that when he went to his girlfriend's
home, a man opened the door and pointed a gun at Lopez's face.  (Answer, Ex. 15, Part 1, at 8-
10.)  Lopez stated that he turned his head so that the gun was not pointed directly at him.  After
the gunman told him to "Back . . . up" and "Run . . . ," Lopez turned around and, while walking
away, was shot in the leg.  (Id. at 8-10.)  Following further questioning, Lopez identified the
assailant as petitioner.  (Id. at 10-11.)

/////

1    On cross-examination, Lopez admitted that when he was presented with the six-

2  photograph photo lineup following the incident, which included a photo of petitioner, Lopez did

3  not identify petitioner as his assailant and, instead, identified another individual.  (Answer, Ex.

4  15, Part 1, at 20-23.)  Lopez further admitted that during that lineup, he was unsure as to the

5  identity of the assailant because the latter wore a beanie during the assault.  (Id. at 20-21.)  Lopez

6  then testified that he met with an officer one to two months before the preliminary hearing.  (Id.

7  at 29-30.)  During this meeting, Lopez was shown a single photograph of petitioner.  (Id.)  No

8  other photographs were shown at this second meeting.  (Id. at 29, 43.)

9    At trial and in light of his unavailability, Lopez's preliminary hearing testimony

10  was read into the record, including his in-court identification of petitioner as the assailant.  (See

11  Answer, Ex. 15, Part 2, at 13.)  Although defense counsel objected to the reading of the

12  testimony prior to jury selection by challenging Lopez's credibility (see Answer, Ex. 15, Part 2,

13  at 9-11), defense counsel did not object when Lopez's in-court identification of petitioner was

14  read before the jury (Id. at 57).

15    Whether trial counsel's failure to object was prejudicial turns on whether Lopez's

16  identification was sufficiently reliable so that it did not violate petitioner's right to due process of

17  the law.  See Manson, 432 U.S. at 100-14.  In determining whether the in-court identification

18  testimony is sufficiently reliable, the court considers the five factors delineated supra.  The

19  shooting occurred on July 17, 2000 and the preliminary hearing was held on November 28, 2000.

20  During the preliminary hearing, Lopez testified that when the door to his girlfriend's house was

21  opened, a gun was pointed at his face, whereupon Lopez turned his head so that the gun was at

22  the side of his head.  Lopez also testified that he could not clearly see the assailant's face because

23  the assailant wore a beanie.  Further, Lopez testified that he was shot while he was walking away,

24  with his back turned to the assailant.  Within one month of the incident, Lopez was presented

25  with a six photo line-up and was unable to identify petitioner as his assailant.  Then, on or about

26  September 2000, Lopez was shown a second lineup consisting only of a photo of petitioner.

1   Subsequently, at the preliminary hearing, Lopez identified the petitioner as his assailant.

2           Having considered these factors, it is evident that Lopez was unable to identify

3   petitioner as his assailant because he did not have a clear view of the assailant's face on the night

4   of the assault.  It is also evident that Lopez was unable to identify petitioner until after the single

5   photo lineup.  Based thereon, the court finds that Lopez's in-court identification was unreliable.

6   See Manson, 432 U.S. at 114.

7           Even so, the court does not find trial counsel to have been constitutionally

8   ineffective in failing to object to the admission of Lopez's in-court identification of petitioner.

9   Trial counsel's failure to object may have been a strategic decision.  By not objecting to its

10  admission, trial counsel may have sought to rely upon it in attacking Lopez's credibility.  A

11  difference of opinion as to trial tactics does not constitute denial of effective assistance, see

12  United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions are not

13  ineffective assistance simply because in retrospect better tactics are known to have been

14  available.  See Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984); United States v. Gibson,

15  690 F.2d 697, 703-04 (9th Cir. 1982) (failure to make evidentiary objections does not render

16  assistance ineffective unless challenged errors can be shown to have prejudiced the defense).

17  Thus, trial counsel's conduct does not meet the first prong of Strickland.

18          Even if trial counsel's conduct was deficient enough to meet the first prong of

19  Strickland, petitioner cannot show the required prejudice.  Petitioner was identified as the

20  assailant by the two other individuals present during the incident: Tauriac and Barajas.  Tauriac

21  testified that on the night of the assault, Barajas and petitioner, whom she identified both by his

22  name Robert Baker and his nickname "Thumper," were visiting her at her home.  (Answer, Ex.

23  15, Part 3, at 89-90.)  She testified that when she heard a sound at her bedroom window, she saw

24  petitioner and Barajas proceed downstairs.  (Id. at 96.)  Before she was able to reach the front

25  door, Tauriac heard someone say "Turn around" and "Run."  (Id. at 99.)  Though she could not

26  state who said those words, she did testify that when she approached the front door of the house,

1 | she saw petitioner holding the gun after she heard the sound of a gunshot. (Id. at 100.) Tauriac

2 | then identified petitioner in-court as the shooter. (Id. at 100-01.)

3 |       Barajas also identified petitioner as the assailant. During the investigation of the

4 | incident, Barajas told an investigator that he was upset with "Thumper" for shooting Lopez. (Id.

5 | at 194.) At trial, Barajas testified that he and petitioner went to Tauriac's home on the evening of

6 | July 17, 2000. (See Answer, Ex. 15, Part 4, at 191; Part 5, at 211-12.) Barajas stated that when

7 | he heard a knock at the front door, he stepped out of Tauriac's bedroom and heard voices

8 | downstairs. (Id. at 186.) He stayed upstairs until he heard a gunshot whereupon he walked

9 | downstairs, got into his car with petitioner, and drove away. (Id., Part 4, at 186-87, 189-91.)

10 | Barajas again identified the individual he was with on July 17, 2000 at Tauriac's home as

11 | petitioner. (Id., Part 5, at 214-15.)

12 |       Furthermore, during the investigation, David Rodriguez, a friend of Barajas, told

13 | Officer Lanfield that a man named "Thumper," whom he also identified as "Rob," committed the

14 | shooting. (Answer, Ex. 15, Part 12, at 674; Part 13, at 680-81.) Officer Lanfield testified that

15 | Rodriguez told him that the shooter admitted to shooting Lopez. (Id.; Ex. 15, Part 13, at 679.)

16 |       In addition to the identification of petitioner by these three witnesses, both defense

17 | counsel and the prosecutor minimized the significance of Lopez's in-court identification during

18 | their closing arguments. In her closing argument, the prosecutor stated:

19 |       Now in court, Lopez was asked to identify the [petitioner]. And in court,
20 | Lopez did. We are putting that aside, and you shouldn't consider that. What he
    said in court when he said "That's the guy that did it," because you can see in the
    discussion that follows after that, that that isn't from – that identification is
21 | suspect. That identification isn't from Lopez's own personal knowledge, "I see
    the guy, I saw him before, I recognize him."
22 |
23 |       In between those two periods of time, he had seen a photograph of the guy,
    and he'd been told by Miss Tauriac "That guy that they've got there, that's –
    they've got the right guy." Okay. So that part – that identification is suspect.
24 | You should just set that aside. It isn't a plus. It isn't a minus. It doesn't go in any
    particular column. It's something we shouldn't be considering because it's not
25 | reliable.

26 | (Answer, Ex. 15, Part 14, at 734-35.)

Similarly, defense counsel made the following remarks during his closing argument:

> . . . Lopez couldn't identify who it was. He came to court and said "That's him right there. That's him right there." Why did he say that? Because Officer Pimentel went out to his house and showed him [petitioner]'s photograph and said, "This is the guy that shot you."
>
> [¶¶]
>
> And think about the insidious things that have been done in this investigation. That should concern you as much as anything else. Taking a photo out and showing it to Lopez, a single photo. The way – was there a report about the phone call from Lopez. No. A report about the discussion with the sergeant? No. A report about showing him the single photo? No. Not a thing.
>
> And if they had gotten their way and if Lopez hadn't been grilled about photos and stuff on cross-examination at the preliminary hearing, it would have never come out, and he would have sat up there and pointed at [petitioner] and then when that was read to you, it would have come across as if he had identified him, when you know he couldn't. And the only reason he did was because of what they did in their investigation to sort of enhance what information they had.
>
> That, ladies and gentlemen, is really, really bad. It's really bad. It's [sic] should offend your sense of justice and what is right and wrong. It should offend you, as people who believe in our system. And when we voir dired you in this case, you said you believe in our system, innocent until proven guilty. Proven guilty means based on competent, credible, honest evidence.
>
> [¶]
>
> . . . [E]ven [the prosecutor] has to acknowledge to you, based on the tainted identification by Lopez, that his identification of [petitioner] is suspect because of what the officers did after. They have to own up to that. What they did after is suspect.

(Id. at 739-40, 752-54.)

For these reasons, there does not appear to be "a probability sufficient to undermine confidence in the outcome." See Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). Accordingly, the undersigned finds that the state appellate court's rejection of petitioner's related ineffective assistance of counsel sub-claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law,

/////

1  as determined by the United States Supreme Court.  Thus, petitioner is not entitled to habeas

2  relief on this claim.

3         C.       Ineffective Assistance of Counsel

4                  Petitioner next argues that trial counsel was constitutionally ineffective for failing

5  to move for a mistrial following Rodriguez's comment about who may have killed Lopez.

6                  The California Court of Appeal considered petitioner's ineffective assistance of

7  counsel claim:

8                  At the outset of trial the court informed the jury that Lopez had died and
          that "his passing had absolutely nothing to do with this case."  During defense
9         counsel's cross-examination of Barajas, the following colloquy occurred:

10                "[Defense Counsel]: Barajas, you don't really care much about the
          oath you took when you raised your right hand today and swore to
11        tell the truth? You don't really care much about that oath at all, do
          you?

12
          "[Barajas]: Is this where I'm supposed to answer yes or no?
13
          "The Court: Yes, you are supposed to answer yes or no to that.
14        And you can explain your answer if you like.

15        "[Barajas]: Sure, I care about it, yeah.

16        "[Defense Counsel]: So the truth is then the person that was with
          you was not [petitioner]; isn't that true?
17
          "[Barajas]: He was there with me.  Like I said, he ain't the one that
18        did nothing.  Know what I mean?

19        "[Defense Counsel]: Pardon me?

20        "[Barajas]: He ain't did nothing.  The one probably killed him is
          probably the same on that shot him.  The same one that shot him is
21        probably the one that killed him.  You know what I mean?

22                [Petitioner] argues that Barajas's statement about how Lopez died was not
          responsive to the defense counsel's question, and was irrelevant and speculative.
23        [Petitioner] asserts the comment was prejudicial because it could have led the jury
          to believe that [petitioner] killed Lopez after the preliminary hearing in retaliation
24        for Lopez's preliminary hearing testimony. [Petitioner] argues that his defense
          counsel was ineffective in failing to move to strike Barajas's statement or request
25        a mistrial.

26        /////

                                              18

We conclude that defense counsel could have had a tactical reason for failing to move to strike Barajas's comment.  Immediately prior to the challenged comment Barajas testified that although [petitioner] was at the shooting scene, he did not shoot Lopez.  Together with the challenged comment, Barajas's testimony suggested that [petitioner] did not shoot Lopez, and whoever did shoot Lopez, later killed him.  No incompetence of counsel is demonstrated.

People v. Baker, slip op. at 14-16.

The state court of appeal's finding that defense counsel's failure to object may have been for tactical reasons is fully supported by the record.  There is no reasonable probability that the outcome of petitioner's trial would have been different had counsel objected to Barajas's statement.

The state court's rejection of petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of applicable principles of clearly established federal law.  This claim should be denied.

D.    Prosecutorial Misconduct

Next, petitioner argues that the prosecutor committed misconduct when she elicited evidence about witnesses' fears of petitioner.  Specifically, petitioner argues misconduct occurred when (1) Officer Pimentel testified about the reasons why he showed a photograph of petitioner; (2) Tauriac testified that she ran from her residence after the shooting because she was afraid of Lopez and petitioner; (3) Officer Pimentel's testimony that Tauriac appeared to be scared during his interview of her; and (4) Officer Layfield's testimony that Rodriguez said he was afraid to tell the officer the shooter's name.

The last reasoned rejection of this claim is the decision of the state court of appeal on petitioner's direct appeal, which rejected the claim as follows:

[Petitioner] next argues the prosecutor committed misconduct by eliciting testimony regarding various witnesses' fears of [petitioner] and in emphasizing that testimony during closing arguments.  In particular, he claims the following constituted misconduct: (a) Pimentel's testimony as to why he showed Lopez the single photo of [petitioner]; (b) Tauriac's testimony that she was afraid of [petitioner]; (c) Pimentel's testimony that Tauriac appeared scared and nervous when Pimentel interviewed her; and (d) Layfield's testimony that Rodriguez said he was afraid to tell Layfield the name of Lopez's assailant.

19

Although [petitioner] twice unsuccessfully objected to Pimentel's testimony that Tauriac appeared nervous and scared, he failed to object to any of the other claimed instances of misconduct. "'To preserve for appeal claims of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admission would not have cured the harm caused by the misconduct.' [Citation.]" (*People v. Silva* (2001) 25 Cal.4th 345, 373.)  In this case, the failure to object waived the claimed misconduct, since an objection and request for an admonition would have cured the harm alleged for each of the challenged comments.  In any event, we review the issue on its merits.

A.    *Pimentel's Testimony Regarding the Single Photo Identification*

On direct examination, Pimentel testified that he showed the single photo to Lopez because Lopez told him he was afraid that he would not recognize his assailant, who he knew was not in custody, if that person "came after him on the street." [Petitioner] argues this testimony suggested to the jury that [petitioner] was likely to pursue and harm Lopez.  He asserts that the suggestion was "entirely speculative and therefore inadmissible."  He also asserts that the prosecutor elicited this testimony to present to the jury Pimentel's justification for the single photo identification procedure.  He argues that because the single photo identification procedure was improper, the testimony regarding it, including the challenged comment regarding Lopez's fear, was unnecessary and prejudicial.

[Petitioner]'s claim of error fails because defense counsel opened the door to the issue of why Pimentel conducted the single photo identification procedure. Prior to testimony by Pimentel, Lopez's preliminary hearing testimony was read to the jury.  At the preliminary hearing, defense counsel raised the issue of the single photo identification procedure and elicited Lopez's testimony as to why the officers asked him to look at the single photograph.  Having opened the door to testimony regarding Pimentel's justification for the single photo identification procedure, [petitioner]'s argument that the prosecutor's follow-up questions of Pimentel on the same issue was unnecessary and prejudicial lacks merit.  FN4

FN4 [Petitioner] additionally contends that even if the prosecutor's eliciting of Pimentel's testimony was justified, Lopez's in-court identification of [petitioner] was erroneously admitted.  As we noted previously, defendant waived the issue of admission of Lopez's in-court identification of [petitioner] by failing to raise it below.

[Petitioner] also contends the following argument by the prosecutor was speculative and unnecessary: "You have a police officer who showed a photograph, and maybe he shouldn't have.  But I sure understand why he did.  I don't for a moment doubt that any of you have a problem understanding why he did.  He showed a photograph to a man that had already looked at a photo series, identification had already been determined, had been attempted, and he'd already tried to make his identification.  That wasn't going to go away.  That wasn't gonna change and Officer Pimentel told that to Mr. Lopez.  He said 'I'm showing you the photo solely because you're concerned and I want you to know what the guy looks like, because now what is going on.' [¶] Now Mr. Lopez knows because he went to the preliminary hearing and found out that the [petitioner] was in

flight, he was out, and he didn't know where he was or when he might come up on him, if he might come up on him, and he wanted to be sure he knew what the guy looked like. So Officer Pimentel did something that was very human, very understandable, and it didn't affect the identification in any way. It never could have." [Petitioner] again asserts that had evidence of Lopez's in-court identification not been admitted, the prosecutor would have had no reason to argue about Lopez's fear of [petitioner]. The prosecutor's argument was a fair comment on the evidence admitted at trial and was not misconduct. (See *People v. Hill* (1998) 17 Cal.4th 800, 819.) Any claim of inadmissibility of the identification evidence was waived by the failure to raise it below.

B.    *Tauriac's Testimony of Her Fear of [Petitioner]*

Tauriac testified that after Lopez was shot, she tried to assist him, but he hit her in the face and called her names. She then ran from her home and started knocking on neighbor's doors because she was afraid of him. The following colloquy ensued:

"[The Prosecutor]: Were you afraid of anything else at the time?

"[Tauriac]: I was afraid of the – the whole – everything.

"[The Prosecutor]: What were you afraid of?

"[Tauriac]: I was afraid of [Lopez], and I was afraid of [petitioner].

"[The Prosecutor]: Why didn't you stay for the police?

"[Tauriac]: I was on parole."

Contrary to [petitioner]'s argument, the record does not establish that the prosecutor deliberately elicited questions calling for inadmissible and prejudicial answers. (See *People v. Bell* (1989) 49 Cal.3d 502, 532.) Instead, the prosecutor could properly question Tauriac as to why she fled the shooting scene. In addition, having just witnessed [petitioner] shoot Lopez, Tauriac's testimony that she was afraid of [petitioner], who had also fled the scene, could properly reflect her fear of retribution which was related to her credibility and was not inadmissible. (*People v. Sanchez* (1997) 58 Cal.App.4th 1435, 1449-1450.) For the same reason, it was not improper for the prosecutor to elicit that Tauriac asked Pimentel to turn off the tape recorder when she identified Lopez's assailant because she was afraid.

C.    *Pimentel's Testimony Regarding Tauriac's Fear*

Pimentel testified on direct examination that while conducting a tape-recorded interview of Tauriac she appeared "scared and nervous" and was "worried about telling [Pimentel]" who Lopez's assailant was. [Petitioner] argues that this testimony insinuated that Tauriac feared [petitioner] would retaliate against her, which was speculative, inadmissible and prejudicial. No misconduct is shown. Pimentel did not testify that Tauriac was afraid of [petitioner]. In any case, as we noted previously, having just witnessed [petitioner] shoot Lopez,

21

Tauriac's testimony could properly reflect her fear of retribution which was related to her credibility and was not inadmissible. (*People v. Sanchez*, *supra*, 58 Cal.App.4th at pp. 1449-1450.)

For these same reasons the prosecutor did not commit misconduct by arguing to the jury, "Has there been any evidence whatsoever throughout this that she has a grudge against the [petitioner], that she doesn't like him for some reason, and wanted to falsely accuse him?  The only reason she has a problem with the [petitioner] is he shot her boyfriend in front of her eyes for no reason. Which is probably also, though, a very good explanation for why Miss Tauriac is in fear of the [petitioner].  It doesn't take a brain surgeon to figure out that if you have watched somebody shoot another person right in front of your eyes for no apparent reason, that there's reason to be somewhat concerned about that person. I'd be afraid of him."

A prosecutor has a broad right to discuss a case in closing argument, including the right to fully state his or her views as to what the evidence shows and urge whatever he or she deems proper. (*People v. Thomas* (1992) 2 Cal.4th 489, 526.)  However, the prosecutor should not purport to rely on his or her outside experience or personal beliefs based on facts not in evidence. (*People v. Medina* (1995) 11 Cal.4th 694, 758.)

Even assuming the prosecutor's comment regarding her personal belief was improper, defendant has failed to establish prejudice.  An objection and request for admonition would surely have cured any harm from the prosecutor's comment.  In addition, the jury was instructed that statements made by attorneys during trial are not evidence.  (CALJIC No. 1.02.)  It is presumed that the jury followed this instruction.  (*People v. Chavez* (1958) 50 Cal.2d 778, 790.)

D.    *Layfield's Testimony Regarding Rodriguez's Fear*

When the prosecutor asked Layfield why Rodriguez was reluctant to tell Layfield the name of Lopez's assailant, Layfield stated, "He told me he was more concerned with any repercussions that might happen for his other friend, Mr. Barajas." [Petitioner] again asserts that the prosecutor deliberately elicited inadmissible speculation and innuendo that [petitioner] would retaliate against his accusers.  Again, we disagree.  Evidence that a witness's hesitancy to identify a defendant is based on fear not uncertainty is admissible.  (*People v. Sanchez*, *supra*, 58 Cal.App.4th at pp. 1449-1450.)

People v. Baker, slip op. at 10-14.

This federal court sitting in habeas corpus applies to petitioner's prosecutorial

misconduct claim the narrow standard of review under the federal due process clause

"and not the broad exercise of supervisory power."  Donnelly v. DeChristoforo, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).  A defendant's due process rights are violated if prosecutorial misconduct renders a trial "fundamentally unfair."  Darden v. Wainwright, 477 U.S. 168, 183, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).  Courts in federal habeas cases review claims of

1    prosecutorial misconduct "to determine whether the prosecutor's remarks 'so
infected the trial with unfairness as to make the resulting conviction a denial of

2    due process.' " Hall v. Whitley, 935 F.2d 164, 165 (9th Cir.1991) (quoting
Donnelly, 416 U.S. at 643, 94 S.Ct. 1868).  That standard allows a federal court to

3    grant relief when the state-court trial was fundamentally unfair but avoids
interfering in state-court proceedings when errors fall short of constitutional

4    magnitude.

5    Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000).  In reviewing a claim of prosecutorial

6    misconduct, the court examines the challenged conduct to determine "whether, considered in the

7    context of the entire trial, that conduct appears likely to have affected the jury's discharge of its

8    duty to judge the evidence fairly."  United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990).

9    Depending on the case, a prompt and effective admonishment of counsel or curative instruction

10    from the trial judge may effectively "neutralize the damage" from a prosecutor's error.  U.S. v.

11    Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1993) (citing Simtob, 901 F.2d at  806).

12           The court has reviewed the record of the entire trial in this matter, including the

13    elicited testimony and closing arguments challenged by this claim.  Upon completion of said

14    review, this court finds that the state court's rejection of petitioner's prosecutorial misconduct

15    claim was neither contrary to nor an unreasonable application of controlling principles of federal

16    law.  Accordingly, this claim should be denied.

17        E.     Failure to Instruct

18           Petitioner's fifth claim is that his constitutional right to a unanimous jury was

19    violated by the use of CALJIC No. 17.41.1.  The last reasoned state court rejection of this claim

20    is the decision of the California Court of Appeal for the First Appellate District on petitioner's

21    direct appeal.  The state court of appeal addressed the claim as follows:

22           [Petitioner] contends the trial court erred in instructing the jury with
CALJIC No. 17.41.1 which provided: "The integrity of a trial requires that jurors,

23    at all times during their deliberations, conduct themselves as required by these
instructions.  Accordingly, should it occur that any juror refuses to deliberate or

24    expresses an intention to disregard the law or to decide the case based on penalty
or punishment, or any other improper basis, it is the obligation of the other jurors

25    to immediately advise the Court of the situation."  He argues the instruction
violated his Sixth and Fourteenth Amendment rights to a unanimous jury.

26

1          Recently, in *People v. Engelman* (2002) 28 Cal.4th 436, 439-440, the
Supreme Court considered the propriety of CALJIC No. 17.41.1 and rejected
2     challenges based on federal and state constitutional grounds.  We are bound under
principles of stare decisis by the holding in *Engelman* rejecting the contention that
3     CALJIC No. 17.41.1 constitutes a violation of state and federal constitutional
rights.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)
4     Consequently, we reject [petitioner]'s identical contention in this case.

5     (Answer, Ex. 4 at 17.)

6          In <u>Brewer v. Hall</u>, 378 F.3d 952 (9th Circ. 2004), the United States Court of

7     Appeals for the Ninth Circuit rejected a habeas claim challenging CALJIC 17.41.1 on the ground

8     that there is no clearly established United States Supreme Court precedent holding that use of

9     CALJIC 17.41.1 violates the federal constitution.  Petitioner's fifth claim is foreclosed by the

10    decision in <u>Brewer</u> and must be denied.

11          F.      <u>Failure to Inform</u>

12          Petitioner further contends that his Equal Protection rights were violated by the

13    prosecutor's failure to inform defense counsel that Lopez was shown a single photograph of

14    petitioner prior to the preliminary hearing.

15          Petitioner's complaint provides only the following with respect to this claim:

16          Ground Six: Conviction obtained by violating petitioner's Fourteenth
Amendment "Equal Protection Clause" failing to inform defense counsel of single
17    photograph showing by police to accuser.

18          Supporting Facts:

19          Petitioner's defense counsel at preliminary hearing asked questions
designed to find out about the single photograph showing, of which counsel had
20    evidently previously been uninformed...

21    (Pet. at 6.)  Petitioner does not elaborate on this claim any further in either the petition or the

22    traverse.

23          This issue was not raised before either the trial court or the state appellate courts.

24    To satisfy the requirement of exhaustion of available state remedies, a habeas corpus petitioner

25    must show that he fairly presented all claims in instant petition to the highest court of state in

26    which he was convicted.  28 U.S.C.A. § 2254(b).  Petitioner here has failed to do so.

1   Nonetheless, a writ of habeas corpus may be denied on the merits, notwithstanding the

2   applicant's failure to exhaust state court remedies.  Id. § 2254(b)(2).

3          Petitioner's allegation that his Equal Protection rights were violated by the

4   prosecutor's alleged failure to inform lacks legal or factual support.  "Conclusory allegations

5   which are not supported by a statement of specific facts do not warrant habeas relief."  James v.

6   Borg, 24 F.3d 20, 29 (9th Cir. 1994).  Even construing petitioner's claim as one of prosecutorial

7   misconduct, the court does not find that the prosecutor's alleged failure to inform "so infected the

8   trial with unfairness as to make the resulting conviction a denial of due process."  Sassounian v.

9   Roe, 230 F.3d 1097, 1106 (9th Cir. 2000).

10          Accordingly, petitioner would not be entitled to federal habeas relief on this

11   claim.

12          G.      Sentencing Error

13          Lastly, petitioner asserts that his sentence violates his Sixth and Fourteenth

14   Amendment rights because the trial judge rather than the jury made factual determinations and

15   because the trial judge considered a juvenile conviction as a "prior conviction" in imposing upper

16   term sentences.

17          Petitioner's sentencing hearing followed petitioner's convictions in three separate

18   cases.  In case no. FC185360, petitioner was found guilty of failure to appear while on bail in

19   violation of California Penal Code section 1320.5 and assault with a semiautomatic firearm in

20   violation of section 245(b) with personal use of a firearm (§§ 12022.5(a), 1192.7(c)(8))

21   enhancements.  In case no. FC47622, petitioner pleaded no contest to unlawful firearm activity in

22   violation of section 12021(c)(1).  In case no. FC47988, petitioner pleaded no contest to unlawful

23   sexual intercourse with a person under the age 18 in violation of section 261.5(c).

24          During the sentencing hearing, the trial court made the following comments

25   before sentencing petitioner to an aggregate term of twenty-four years:

26   /////

The Court has read and considered the presentence report, the comments of counsel.  And at this time, the Court makes the following findings.

Number one, [petitioner] is ineligible for probation unless unusual circumstances are found.  He's been twice previously convicted of felonies.  Further, there's an allegation of 122022.7 to be true in this matter.  Unless there's unusual circumstances, [petitioner] is ineligible for probation.

The Court has rereviewed Rule 4.413, and the Court cannot make any of the findings required by that section.  He has a history of violent crimes in his background.  And I see nothing that would take him out of the ineligibility statute based upon his prior record and based upon the kind of person that he appears to be.

The Court, therefore, denies a grand of probation.

For the violation of Penal Code Section 245(b), the Court imposes the aggravated term of nine years.  The Court chooses the aggravated term because [petitioner] has prior convictions, both as an adult and as a juvenile which are numerous, and this case, obviously, is showing an increasing seriousness.

With the violation of Penal Code Section 12022.5(a), the Court imposes an aggravated term of ten years.  The Court chooses the aggravated term because [petitioner] at the time this crime was committed was on two felony grants of probation, and his performance on probation and parole have been unsatisfactory.

The Court also notes [petitioner] has been involved in the criminal justice system for an extensive period of time and been to the youth authority back in 1992.  His comment to the probation officer when discussing a victim of a violent crime indicated, quote, "Serves his ass right," end quote.

The facts of this crime are totally senseless, totally senseless violence.  The shooting with a firearm of an unarmed man who was retreating is about as cowardly as they get.  It shows Mr. Baker's extreme potential for violence.

The Court in determining the appropriate judgment and sentence in this matter must consider the appropriate punishment and also must consider the protection of the public.

(Answer to Supp. Pet., Ex. 1 at 10-11.)

Petitioner asserts that the trial judge made factual determinations beyond the fact of his prior convictions in imposing the upper terms for the section 245(b) and 12022.5(a) offenses in violation of <u>Cunningham v. California</u>, 549 U.S. 270 (2007).  Based on these findings, petitioner received the upper term of nine years for the section 245(b) violation and the upper term of ten years for the personal use of a firearm enhancement (§ 12022.5(a)).

26

1        This claim was never addressed by the state courts.  In his direct appeal in state

2   court, the California Supreme Court granted a petition for review on February 25, 2003 and

3   deferred action on the case pending disposition of People v. Black, 35 Cal.4th 1238 (2005),

4   which held that a defendant is not entitled to a jury determination on sentencing factors used to

5   justify the imposition of an upper term as long as the sentence is within the prescribed statutory

6   range.  On November 15, 2006, the California Supreme Court dismissed review in the case and

7   remanded the matter to the state appellate court.  Subsequently, the Supreme Court overturned

8   Black in Cunningham v. California, 549 U.S. 270 (2007).

9        In his supplemental petition, petitioner argues that his Cunningham claim is not

10  barred by Teague v. Lane's non-retroactivity doctrine.  Teague, 489 U.S. 288 (1989).  In Teague,

11  the Supreme Court held that "new constitutional rules of criminal procedure will not be

12  applicable to those cases which have become final before the new rules are announced."  See

13  Teague, 489 U.S. at 310.  The United States Supreme Court has instructed that when a Teague

14  argument has been "properly raised by the state," a federal habeas court must first determine

15  whether a Teague bar exists before it may proceed to the merits of the petitioner's substantive

16  claims.  Horn v. Banks, 536 U.S. 266, 271-72 (2002); Leavitt v. Arave, 383 F.3d 809, 816 (9th

17  Cir. 2004).  Respondent does not present a Teague argument; petitioner, however, does.  In

18  Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008), the Ninth Circuit held that Cunningham "did

19  not announce a new rule of constitutional law and may be applied retroactively on collateral

20  review."  Therefore, petitioner's Cunningham claim is not Teague barred.

21       In Blakely v. Washington, the Supreme Court held that "'[o]ther than the fact of a

22  prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

23  maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"  542 U.S. 296,

24  301 (2004) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)) (emphasis added);

25  accord Cunningham v. California, 549 U.S. 270, 274-75 (2007).  "[S]tatutory maximum" means

26  "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury

verdict or admitted by the defendant." <u>Blakely</u>, 542 U.S. at 303.  Under California's determinate

sentencing law ("DSL"), "[t]he statute defining the offense prescribes three precise terms of

imprisonment-a lower, middle, and upper term sentence." <u>Cunningham</u>, 549 U.S. at 277.

Because "an upper term sentence may be imposed only when the trial judge finds an aggravating

circumstance," the DSL's middle term is "the relevant statutory maximum." <u>Id.</u> at 288.  In

<u>Cunningham</u>, the Supreme Court, citing <u>Apprendi</u> and <u>Blakely</u>, held that California's DSL

violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper

term based on facts found by the court rather than by a jury.  <u>Id.</u> at 293.

Here, because petitioner's sentencing claims were not addressed by the state

courts, this court conducts a de novo review of the record.  <u>See</u> <u>Nulph v. Cook</u>, 333 F.3d 1052,

1056 (9th Cir. 2003).  During sentencing, the trial judge imposed an aggravated sentence of nine

years for violation of section 245(b) after finding that petitioner had previous convictions, both as

an adult and as a juvenile, and that the convictions show "an increasing seriousness."

For the reasons discussed <u>infra</u>, the court does not find that these factual determinations entitle

petitioner to habeas relief.

In <u>Kessee v. Mendoza-Powers</u>, 574 F.3d 675, 678 (9th Cir. 2009), the Ninth

Circuit addressed the question of whether a trial judge's factfinding regarding the defendant's

probation status violated the petitioner's constitutional rights.  Although the court in <u>Butler v.

Curry</u>, 528 F.3d 624 (9th Cir. 2008), held that the fact of being on probation at the time of a

crime does not come within the "prior conviction" exception, the court acknowledged that it has

adopted a narrower construction of the "prior conviction" exception than its sister circuits.  <u>Id.</u> at

678-79.  The <u>Kessee</u> court then noted that,

> [f]or purposes of AEDPA review, . . . a state court's determination that is
> consistent with many sister circuits' interpretations of Supreme Court precedent,
> even if inconsistent with our own view, is unlikely to be "contrary to, or involve
> an unreasonable application of, clearly established Federal law, as determined by
> the Supreme Court."

<u>Id.</u> at 679.

On the other hand, when the deferential AEDPA standard of review does not apply, as here, courts in the Ninth Circuit are bound by this circuit's narrower interpretation of the prior conviction exception. Kessee, 574 F.3d at 677 ("When we review de novo, our own interpretation controls, of course." (footnote and citation omitted)). Accordingly, this court is bound by Butler in finding that the trial court made an improper finding concerning petitioner's probationary status. See Butler v. Curry, 528 F.3d at 645-47 (examining Ninth Circuit case law regarding criteria for applying prior conviction exception and concluding that, consistent with circuit law, defendant's probationary status is not a fact within the exception).

Petitioner also asserts that his prior juvenile adjudication, which was sustained without full constitutional protections such as a jury trial, was improperly used as a felony conviction to calculate his sentence, and cites, inter alia, Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Tighe, 266 F.3d 1187 (9th Cir. 2001). In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. In Tighe, the Ninth Circuit held that juvenile convictions that do not afford the right to a jury trial and proof beyond a reasonable doubt do not fall within Apprendi's "prior conviction" exception and therefore, may not be used as sentence enhancements. Tighe, 266 F.3d at 1194.

It has been recognized that for purposes of federal habeas review, several other courts have disagreed with the holding in Tighe, and in the absence of explicit direction by the Supreme Court on the use of non-jury juvenile adjudications as sentence enhancements, Tighe does not represent clearly established Supreme Court law. Boyd v. Newland, 467 F.3d 1139, 1151-52 (9th Cir. 2006) (holding that Tighe is not clearly established law for purposes of 28 U.S.C. § 2254(d)(1) in the absence of Supreme Court guidance and noting contrary holdings in California and the Third, Eighth and Eleventh Circuits). Again, however, when a court is conducting a de novo review, this circuit's interpretations control. See Kessee, 574 F.3d at 677.

1  Thus, consistent with Tighe, the court finds that the trial court improperly considered petitioner's

2  juvenile convictions.

3          Even considering these improper factual findings, however, any constitutional

4  error that may have occurred based upon the trial court's findings regarding the factors cited in

5  support of the imposition of the upper term was harmless because the sentence imposed is

6  consistent with the Sixth Amendment. Butler, 528 F.3d at 643. The United States Supreme

7  Court has substantially restricted a state prisoner's entitlement to federal habeas corpus relief by

8  requiring a showing that the violation of a federally guaranteed right had a "substantial and

9  injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S.

10  619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In order for an

11  error to have a "substantial and injurious effect or influence," it must have "affected the verdict."

12  O'Neal v. McAnnich, 513 U.S. 432 (1995). More specifically, "[u]nder that standard, we must

13  grant relief if we are in 'grave doubt' as to whether a jury would have found the relevant

14  aggravating factors beyond a reasonable doubt." Butler v. Curry, 528 F.3d 624, 648 (9th Cir.

15  2008). "Grave doubt exists when, 'in the judge's mind, the matter is so evenly balanced that he

16  feels himself in virtual equipoise as to the harmlessness of the error.'" Butler, 528 F.3d at 648

17  (citing O'Neal, 513 U.S. at 435). Furthermore, "the relevant question is not what the trial court

18  would have done, but what it legally could have done." Butler, 528 F.3d at 648-49.

19          Under California law, a single aggravating factor is sufficient to authorize an

20  upper term sentence. Butler, 528 F.3d at 641-42. Accordingly, if at least one of the aggravating

21  factors on which the trial court relied in sentencing petitioner to an upper term sentence is

22  established in a manner consistent with the Sixth Amendment, the sentence passes constitutional

23  muster. Butler, 528 F.3d at 643. The presentencing report referred to by the trial judge indicates

24  that petitioner was previously convicted twice as an adult. (See Answer to Supp. Pet., Ex. 2 at

25  5.) The first was a misdemeanor conviction for domestic violence. (Id.) The second was for

26  possession of a weapon and unlawful sexual intercourse with a person under age eighteen. (Id.)

1    Thus, because the trial judge could have legally imposed the upper term solely for the existence

2    of petitioner's prior adult convictions, petitioner's aggravated sentence for violation of section

3    245(b) is not unconstitutional.

4          Similarly, any constitutional error that may have occurred based upon the trial

5    court's findings prior to sentencing petitioner for violation of section 12022.5(a) was harmless

6    because this court does not have a grave doubt as to whether the jury would have found at least

7    one such aggravating factor beyond a reasonable doubt.  See Washington v. Recuenco, 548 U.S.

8    212, 220 (2006) (sentencing errors are subject to harmless error analysis).  As to the violation of

9    this section, petitioner was sentenced to an aggravated term of ten years after the trial court found

10   that petitioner committed the instance offenses while on two felony grants of probation and that

11   his performance on probation and parole were "unsatisfactory."

12          Petitioner's probation report included information that as a juvenile, petitioner

13   was charged with petty theft and joyriding charges in 1988; violated court orders multiple times

14   (making a false police report, truant from school, terminated from court-ordered counseling due

15   to non-attendance; testing positive for marijuana; absconding from the Our Family program; and

16   escape from the Alinda Assessment Center); and was committed in 1992 for assault with a

17   deadly weapon.  (Answer to Supp. Pet., Ex. 2 at 4-5.)  In 1995, petitioner was convicted as an

18   adult for a misdemeanor battery.  (Id.)  In 1997, petitioner received a misdemeanor conviction for

19   domestic violence and, in 1998, petitioner received felony convictions for possession of a

20   weapon and unlawful sexual intercourse with a person under age eighteen.  (Id. at 5.)  The

21   probation report also noted that petitioner was issued 36-months probation for each of the 1998

22   felony convictions.  (Id. at 2.)  The court may presume that such evidence would have been

23   produced at trial if the nature of petitioner's past convictions and adjudications had been tried

24   before a jury.  See Salazar-Lopez, 506 F.3d 748, 755 (9th Cir. 2007).

25          In light of such facts, this court does not harbor a grave doubt that the jury would

26   have found, beyond a reasonable doubt, that petitioner committed the instance offense while on

two felony grants of probation and that petitioner's performance on probation and parole have been unsatisfactory.  For these reasons, the court does not find the imposition of an aggravated sentence for violation of section 12022.5(a) is unconstitutional.   Petitioner is not entitled to habeas relief on his sentencing claims.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 2, 2010.

UNITED STATES MAGISTRATE JUDGE

/014;bake1170.157

32